in this case. The issue on appeal is whether the district court erred in granting a Rule 12b1 motion to a complaint filed by Scott Seldin, joined in by his siblings, seeking a narrow statutory trust accounting order in a massive children's trust, which had remained hidden for the details of which had remained hidden for many years, and all of which are under a new arbitration provision. Now, I want to present two arguments to the court and, of course, answer any questions you have. Those arguments are going to center on two cases decided by this court. The first is the City of Benkelman v. Baseline Engineering, authored by Judge Shepard, and the second is this court's decision in Brown v. Brown-Thill. Now, let me start with the first one, but before we get there, there's a preliminary issue we have to cover, and that is the res judicata and collateral estoppel order that was entered by the district court in considering some prior lawsuits. I only want to say one word about the prior lawsuits. They were built on the fact that there was an arbitrator who had been communicating ex parte during arbitrations. It was a great concern, so great they did file more than one lawsuit to try to stop it, but all that went away and we got a new arbitrator, but that's what the lawsuits were about, but the most important part about it is they were all dismissed without prejudice on jurisdictional grounds, and Nebraska law, unlike some other jurisdictions, is very clear. There is no final judgment on the merits for res judicata purposes or collateral estoppel when there is no final judgment on the merits, so those cases have been, those cases were dismissed not on the merits, and therefore res judicata and collateral estoppel do not apply at all, and this Hillary v. Trans World case said that the first forms law applies when you're trying to determine res judicata, you've got to look to whose judgment was being considered. In this case, it was Nebraska courts, and so we look at that. Can I ask a question about that and related to other issues as well? This lawsuit, as I read it, is based on the, let me get the letters right, MSCM trust, and do I read your complaint correctly that all you're seeking in this complaint is an accounting on that trust? Yes, Your Honor, exactly. And that trust, and just walk me through, help me through this, and forgive me if I'm not understanding something very basic, that trust does not exist anymore and has not since 2002. Yes, Your Honor, that trust did terminate after a time, and, but what happened is there was no accounting done in that trust at all. Not even one page of paper was done. This was a trust that was set up by the father of Scott Selden, and his siblings were also involved in that, and their trusted uncles were in charge. Nobody questioned at the time, the family wasn't in dispute, there was no reason for concern, there was no reporting done whatsoever. It wasn't until long after the trust had terminated, and even the arbitrator and the underlying actions identified it and said long after that occurred, that's when they discovered on a kind of a piecemeal basis that, wait a minute, something's not right here, and something was wrong. And so then the Nebraska statute that allows for, that you're relying on, was then enacted after the termination of this trust? The statute that we're like, is not, we weren't changing the beneficial interest of any of the parties, or changing the composition of the trustees, or anything like that. All we were doing is we're seeking under the Nebraska Uniform Trust Act, we're just seeking using the procedural device and accounting, which did come after that. But I think we've presented some authority to the court that says, when it's procedural, it doesn't have any constitutional impact. And so is the corpus of that trust, then, is that what has been in litigation in state courts, or are we really just sort of shifting that, those same assets that were under that trust, and is that what's been the subject of your state court cases? It's an excellent question, Judge Kelly. In the state court, there was no mention of the MSCM trust, or the MSCM trust agreement, or any aspect. There are 43 identified, this is a massive portfolio of commercial properties and shopping centers, 43 of them were in that trust. If you, I'll let you look, if you look at the section 2.1 of the separation agreement, it identifies the property, and that's at appendix 161. You can then look at the MSCM trust portfolio, that's at appendix 1210. When you compare them, you will see that there are at least 25 properties that were in that original MSCM trust, that never made it into the separation agreement, never were a part of any arbitration, never were involved at all. And even as to the, relates to the other 18, those, the arbitration dealt with a different subject matter, it was a corporate interest. I'll give you just one quick example. Millard and, it was Millard, Ted, and Stan, those are the three men who owned this company. The Montclair Investment Company was one, had multiple shopping centers in it. And one of, and in one case, the arbitrator found that, that Ted and Stan had taken some money, and had overcharged Montclair, the whole unit. Well that was Millard's, Millard was a part of that, so he got less money than he was supposed to in Montclair. Montclair was an asset in the trust, but it's Scott and Tracy and Derry, the selling children, they have a different harm, a different, it's represented by a different harm to them from that trust. And this was all discovered and came out that this overcharging and overbilling and excessive fees were being done, came through the arbitration, and that is what then triggered this action under the trust. Mr. McClague, you've gone beyond your eight minutes that you ask us to warn you about. Yes, Your Honor. 15 minus eight, seven, and we're at 630. Yes, Your Honor. You're welcome to keep going. Actually, I think. You have 13 minutes total. Okay, thank you. So I have six more until the end. Okay, Your Honor. Let me, let me, let me answer. I will say nothing more. You all are in charge of this. It's bad to split argument. Go ahead. Thank you, Your Honor. Your Honor, what I want to, let me return, unless I haven't sufficiently answered your question, Judge Kelly, I want to return to the city of Benkelman just as the standard here. In, in city of Benkelman, if you've removed race judicata and collateral estoppel at that point, and you've set those aside, the only thing left, and in fact, their motion under rule, in their rule 12 motion said it was because of an arbitration agreement. That is what dictated their, the jurisdiction of the court. And the city of Benkelman, which of course, the district court did not have the benefit of that at the time. But the city of Benkelman case has made it very clear that an arbitration agreement standing alone does not supply jurisdiction. AAA rules are nothing but a contract. They are not, they are not diversity or federal question or, or other standards under title 28. So those don't satisfy it. And what we had here is we have a massive record on a motion to dismiss. You have 11 or 1200 pages that have been presented to the and probably in the chambers and maybe the judge, the district court to attempt to do as best job as they could. But that's why city of Benkelman stands for that proposition. It does so because it should be done under a different review. And I, and I don't want to speak for Judge Shepard who's, who wrote that opinion, but it seems that there was clarity brought to this in this circuit on that point. So if, if it's okay, I will turn next to the, the next case, the Brown versus Brown fill decision. And in that case, by this court, it was dicta of no doubt to want to make that point, but it was important dicta. Judge Loken wrote that opinion joined by think judge Riley and judge by, but they, it was important in that case to set this message. They don't care that there was an arbitrator or an arbitration agreement. So even if somehow this court concluded that the separation agreement here applied to this matter, Brown versus Brown, Phil would still apply. I want to just say one thing about wasn't listed as a property, wasn't listed as an entity, wasn't referenced in any other way. There were lawsuits that were filed. It's not referenced. It's not mentioned. It went to arbitration. An answer was filed. The MSCM trust was mentioned in passing reference. There were 41 causes of action in that. Not one of them said there was a breach of duty of a, of a MSCM trust. But even if all of that was set aside and you get to Brown versus Brown, this is where you arrive there. You arrive at a case which said an arbitrator cannot do a judicial act in that circumstance. And that's what the, that's, that's why we came to the court. If we had gone to the arbitrator and there was nothing for the arbitrator to turn to there, the separation agreement doesn't give the arbitrator authority to enter orders on trusts or accounting. The, the MSCM trust agreement doesn't say anything about an arbitrator entering a county orders or anything else. The only place that the arbitrator could go there was to- Didn't the trust itself allow the arbitrator to order an accounting? The trust agreement itself does not. Only by incorporating the AAA rules. There- That's the only way you can say the agreement does it, it incorporates the rules and the rules say they can't. Well, that's an, and that's your honor of the separation agreement were applied to the, to the AAA rules. But we're talking about the MSCM trust agreement itself, which does not have AAA rules, doesn't have an arbitration clause, doesn't have any reference to any of that. And so what our, our position is, is your honor, is that when you have no, it's completely disconnected. What we, what happened here, your honors, is this, is that we found out something alarming happened during that arbitration. Suddenly something had been hidden and dark for a long time. No one had seen it. And suddenly the arbitrator started, information started coming out and that's what happened. And so now we have an arbitration ruling on it. Is there no, and again, maybe there's a simple answer to this, is there no time limit on the ability to request an accounting on a defunct trust? That's an excellent question. And normally there would be, but here's why there isn't. The separation agreement, when they just set this up, it was to separate properties. That's for the word separation. Separate the properties, separate the entities. But they also said there, and that we've cited in our brief, and there's an appendix side to this, that there was a tolling agreement for all claims, regardless of whether. But you've just said that the MSCM trust is not part of the settlement agreement, so how could any tolling agreement apply to that trust? Very good, your honor. The fact, the way it applies to it is because the parties to the trust, that we have Scott on one side, we have Ted and, uh, and Stan on the other side, they agreed in the separation agreement, individually agreed, we are tolling all claims between us. And I think the purpose was that let's handle this separation stuff first. Let's get these things separated. And if there's something left over, let's hope there isn't. But we're just going to toll everything while we're separating, because if we don't do that, people will be firing shots in lawsuits during the portion of the time we're trying to separate, and we don't want that to happen. So there was a tolling agreement, and it applies in this particular instance. And so, your honor, I will reserve my, whatever remainder of time I have, I will reserve. One minute and four seconds. Well, I, okay. Proceed. What's that? I say proceed to your seat. Now I understand that Ms. Vogt has argument. No, Ms. Vogt has two minutes, counsel. Oh, I'm sorry, your honor. Sorry. I'll stay in charge of the proceeding. Okay. May it please the court, obviously I'm going to be brief. I just want to indicate that I am here representing Tracy Selden Mosier and Derry Selden. They are complete strangers to this until they filed the motion to intervene. They are not employed by the company. They do have no management functions. They were not named in the separation agreement. They have never been categorized as part of the Arizona Seldens. They do have an interest in this. We believe that because of the difference in participation, their interests are not identical with Scott Selden's interests, and therefore we believe that they should be allowed to intervene as a matter of right. Thank you. Unless you have questions. Questions? Okay. Thank you very much. We are to Mr. Lapp. Thank you, your honor. My name is Bob Lapp. I'm here on behalf of the appellee, Ted Selden. Thank you for hearing me today. This appeal can be isolated to one question. We're talking about a lot of different things, but it can be isolated to one question, and that is, did the parties agree to have their arbitrator determine matters of arbitrability? And the court need only look at one document to answer that question, and that's the separation agreement that can be found at page 121 of the joint appendix. And the separation agreement identifies arbitration as the exclusive means to resolve the party's family business disputes. And it incorporates, and this is and that rule provides, and I'm paraphrasing, the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections to the scope of the arbitration agreement or to the arbitrability of any claim. And as this court in Fallow versus Hitech Institute teaches, the incorporation of this rule clearly and unmistakably vests the party's arbitrator with exclusive authority to rule on all questions of substantive arbitrability. In other words, the parties agreed to have their arbitrator, not a court, determine jurisdictional issues, such as whether a claim by one party against another was subject to arbitration. And the district court, the lower court, Judge Battalion, along with the state court back in 2012 when the Arizona Seldons, of which Scott is a part of, tried to go into state court to evade their arbitration obligation, recognized this agreement, and both courts correctly required Scott to honor this agreement by sending him back to arbitration, to arbitrate the issue of arbitrability in the first instance. And they don't challenge that, because they understand they have to bring this to the arbitrator in the first instance. And how do they say they complied with it? Well, they not only represent that the jurisdictional question at issue here was brought to the arbitrator, but that he answered the question in the negative. And what do they rely on? They rely on one document that was called a motion to clarify. And it's at 1108 in the appendix. And it was filed by the Arizona Seldons, including Scott, after the arbitrator ruled against them early on in the arbitration on their first two claims. Claim one, which was conversion. Claim two, which was national tenants. And that was back in, he made his awards on October 17, 2015. They filed their motion to clarify after that, because there were numerous findings in these two interim awards that affected them and affected the trust. And I'm going to talk about that. But they filed it after the arbitrator ruled on October, in October of 2015. And they were challenging these two awards. And then the arbitrator looked at this motion to clarify. It was a 10-page motion, and I'll talk about that also. And he entered an order denying the motion to clarify about 12 days later on November 29, 2015. And Scott is trying to convince this court that that order by the arbitrator, I'm going to call it the denial order, was an implicit denial of jurisdiction over a trust accounting, which they have filed in the lower court. But for numerous reasons, Scott's interpretation is simply unconvincing. When you say the trust account, are you talking about the MSCM trust? Yes. So is that part of the settlement agreement, the trust? And again, this complaint is directed at that trust. It's very specific. Yes. When you say settlement, you mean the separation agreement? I'm sorry. I'm sorry. The separation agreement. I apologize. The trust was terminated eight years before the separation agreement was ever entered into. It was not in existence. So how then can it be part of the separation agreement? Well, for a couple of reasons. And let me just say, we're kind of getting away from the issue of the scope, because I think this is for the arbitrator to decide. He's never decided that. I think that has to be decided by him. But let me answer your question. First, when the trust was terminated in 2002, the assets in the trust were put into this entity called Kent Circle Investments. Kent Circle Investments is a signatory to the separation agreement. That's first. Secondly, when they adjudicated claims one and two, conversion of national tenants, they focused their evidence, and the arbitrator says it in those awards, they focused their evidence on these allegations that Ted Selden and Stan Silberman had breached their fiduciary duties as trustees. So the arbitrator had to take on all these issues as it related to this children's trust that had terminated in 2002. And so they put the evidence before him, and what he found was one, Ted and Stan did not breach their fiduciary duties. Two, a release that was entered into by the three beneficiaries, Scott Selden, Tracy Mosier, and Gary Selden, his brother and sister, it was an enforceable release, and it released Ted and Stan from any liability, including the duty to account, which is in the trust agreement, by the way. I think it's at section 8.8 of the trust agreement. They had a duty to account every 12 months. But the arbitrator found that the release was enforceable and released them from any liability. The third finding he made in interim awards 1 and 2, and he makes this finding actually in six of his 13 awards that he ultimately renders in this matter, was that Millard Selden, Scott's father, was the de facto owner of this trust, that he remained influential in the administration of the trust by the trustees. So in response to your question, your honor, the trust was becoming part of this litigation, of this arbitration. They put that at issue. But again- Assets, or the trust residuary, or the trust residual assets, or whatever you want to call them. Again, your honor, with all due respect, that still is an issue for the arbitrator. I want to make that clear. Well, unless it was really clear, surely it's not for the arbitrator if it's something, you know, way far away. But you say it's close enough, is what you're arguing. Well, I think in the case that we cite in our brief, Valspar, the court said even there's a doubt as to whether it's covered by the arbitration agreement. When you've got arbitrability as an arbitrator. And there was a recent case in 2014, Principal Life, and the Southern District of Iowa, and that said, and I'll give you the site here, 2014, Westlaw 12601041, I'm sorry, 12601041. And in that case, there was an argument- Is that a district court case? Yes, it is. Southern District of Iowa. And in that case, there was an argument that the court claims that the parties are bringing fell outside of the arbitration clause. And they were trying to say, well, there's no way it could be covered. And Judge Gritzer said, that doesn't matter. You got the requirement, the arbitrator makes the decision when you incorporate the AAA rules, so you got to send it to him. You got to send it to him in the first instance. And so I do want to go back to the complaint that they filed. They filed this complaint on July 29, 2016. And they said in the complaint was that the arbitrator entered an order, this denial order, on the motion to clarify without explaining whether he could award an accounting. So they admit he didn't explain it. About a month later, and by the way, they also admit in their complaint that the arbitrator actually ordered that there be an accounting of the distributions in this Millard Seldin Children's Trust. And that was later. That was a later award that was entered on a claim that we brought, the only claim, and he found liability of the Arizona Seldins. He found that they had breached fiduciary duties and violated securities law, and he had ordered an accounting of the trust. So again, it was part of the arbitration. And a month later, they filed a motion in state court, and they were seeking to vacate another award that was issued by the arbitrator. I think it was Award 12. And in the brief in support of that motion, it is in the record at 1026, they now say that the arbitrator denied this motion to clarify. Again, this motion that says that they put this issue before the arbitrator, and they said they denied it without answering whether he had authority. Now, we moved to dismiss the complaint on October 3rd, 2016. It was then we raised the issue of arbitrability. And at that point, the interpretation starts to change. And they begin starting to assert that the arbitrator did question. We satisfied our arbitrability obligation. Now, your motion was only a 12B1 motion, right? You're right. Okay, proceed. And I'm going to address Bankelman if you'd like me to, but let me just- I would like you to. Right now? I will. At some point. Your Honor, you authored Bankelman, and it came out on August 11th. And it's interesting that in the Bankelman case, there's first a discussion of the interface construction case. And that was a the opinion go on to discuss that we've never had just a single arbitration agreement independent of statutory or other binding jurisdictional limitations. We'd never had that. And we would take the position that in this case, Rule 7A is one of those other binding jurisdictional limitations. It's a rule in the AAA that we incorporated into the separation agreement. Now, I understand that they're alleging diversity jurisdiction. I appreciate that. But the decision in Bankelman says other binding jurisdictional limitations are different. And we would submit that Rule 7A, which the Fallot decision said was a considered a jurisdictional rule, takes that out of our case. Because again, we had Rule 7A incorporated. Another thing that I'd like to say about Bankelman is that unlike the appellant and well, the parties in Bankelman had an issue in the lower court as to whether 12B1 or 12B3 applied. We tried this motion under 12B1. There never was an objection lodged before Judge Battalion that we couldn't proceed under 12B1. That was an issue before Judge Coff in the Bankelman case. And Judge Coff had to take that issue on. Another thing I think that's important to note is that Scott has not argued that proceeding under 12B1 as opposed to 12B6 would have produced some or prejudiced his interest or changed the outcome. And in fact, it wouldn't have. Because if you read Judge Battalion's opinion, only the separation agreement and documents that were embraced by the pleadings and matters of public record were relied upon. That's all he relied upon. And this court has said, going back to porous media back in 1999, that when you review a complaint, you can look at the documents embraced by the complaint, you can look at matters of public record. And if you read the complaint, they have all these interim awards referenced, they have the motion to clarify referenced, they have the denial order referenced. So again, what would be the result? They allege in the complaint that essentially the arbitrator denied their motion to clarify without explanation. So even if you take that as true, because their argument is we didn't get the safeguards that we would have gotten under 12B6, if you take that as true, the result's still the same. They have to prove they were harmed by this decision if you take the position that Bankelman required a 12B6 analysis. And for these reasons, I would submit that Bankelman does not apply. Now, returning back to my position again is I think it's very important to note that after that motion was filed in district court, and they talked about not answering the question, their position changed before this court. It has changed dramatically because now they went from asserting that the arbitrator didn't answer the question, that he not only answered it, he denied jurisdiction. Well, that didn't happen. The arbitrator never had this issue in front of them. He never had the Brown case that they talk about. They want to talk about the Brown case. Brown doesn't apply. It was an ongoing trust, and it was a trust removal situation. But in any case, the arbitrator's never had in the first instance the opportunity to address this issue, which he has to do because we incorporated Rule 7A. And that's what the lower court held, and that's what the state district court held back in 2012. And again, they changed their position, and it's because we raised arbitrability. They realized they needed to change their position, the original interpretation that he didn't answer the question or he didn't explain his answer, in order to survive dismissal. Scott should not be permitted to take and change his position solely in effort to gain a strategic advantage. Also, you cannot read the motion to clarify and the order denying the motion to clarify, and the motion clarifies at 1108 at the appendix, and the denial is at 1177. And you cannot read those two documents that they say proves their position that the arbitrator declined jurisdiction. You cannot read them and come away thinking that the arbitrator just declined jurisdiction to order a trust accounting. I implore that you read these documents. The motion to clarify, as I said earlier, was a 10-page motion. It was addressed to the findings that I discussed earlier in Claims 1 and 2. They were trying to have the arbitrator reconsider the merits. And they are saying that a statement embedded in this motion was their question that they put to the arbitrator, and when he denied it, that satisfied their arbitrability obligation. And what was the statement? And I'm going to paraphrase. The section concludes at the end, and it's on page five of this motion to clarify, and it says, it was unclear whether the arbitrator believed he did not have the authority to order an accounting under trust, real estate, and partnership law. It wasn't just limited to trust law. It was three categories. Or whether he felt the Omaha Seldons, us, and Ted were exempt from providing an accounting. And either way, we want you to clarify that. A compound question at best. At best. But this is what they're saying satisfied their arbitrability obligation. Now, the arbitrator didn't specifically address this compound request, but he didn't address any of the numerous other requests that are in this 10-page motion, this motion to reconsider. Now, again, Scott and his briefs and his filings before you would take the position, oh, yeah, this motion was just this one question. That's all that was asked. Do you have jurisdiction to order a trust accounting? Nothing could be further from the truth. As I've just indicated, it was a 10-page motion. The statement was a compound statement embedded on page five of the motion. That doesn't satisfy their arbitrability obligation. We've been at this for eight years. We're going into our eighth years. We've been litigating in some form or another for seven years. Stan Silverman died last year, September 7th at the Ted Seldin is 85. He deserves to get closure. He deserves to get closure of this situation that's occurred, this contentious, this unfortunate family dispute and your affirmance of the magistrate on intervention as well as Judge Battalion's order will bring Ted closer to reality. Thank you for your argument. Ms. Dolan, please give Mr. McClay two minutes for rebuttal. Yes, Your Honor. Thank you, Your Honor. Your Honors, you could bring peace to a family. That's why we come to the courts because sometimes families can't do that. This is a really important occasion because this dealt with a massive trust which was never discovered, never turned out until really this arbitration process. I want to address some of the questions. Judge Benton, to follow up on something you said, the agreement here is clear. There is no where else to go. We don't have to ask Mr. Commander, who is the arbitrator, now retired on every question or issue for the rest of time just because they involved him. This was a clear picture. As a matter of fact, we wouldn't have to ask him about whether we have to go to an arbitrator any more than we'd have to ask him about whether we have to go to see Mark Schlossberg, who is the third trustee also on this case. It's an entirely different agreement, a different case. We did, in fact, there was a question asked and I would point to the footnote two in Brown v. Brown-Thill. In that case, Judge Loken commented about the fact that an issue was raised by the arbitrator, but the arbitrator never answered the question. And the court's opinion was, well, you know what, we have to accept that answer as it was. That's what happened here. A motion was made about whether a trustee accounting could be done. The motion was denied. There really isn't any other way to look at that. And we can't be sending the issue back on a kind of a merry-go-round between the arbitrator and the courts. And as a matter of fact, I believe that it would be functus officio. I don't believe that the arbitrator could issue a different ruling, even if they could. But even if arbitration somehow is relevant here, Brown v. Brown-Thill makes clear that that is not the case when you're asking for a statutory accounting order, and there is nothing else here but that. That's the only place left. Scott was a, well, let me just conclude with this, Your Honors. We're here on a Rule 12b-1 motion, and that standard is very high, and this court sits de novo. And we'd ask that this court reverse and vacate the judgment and remand this matter to the district court for trial or at standard that was announced in the City of Benkelman. Thank you. Thank you very much for the argument. Cases 17-1045 and 17-1047 are submitted for decision by the court.